**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ESTEFANI ROMERO<br>PLAINTIFF,<br><br>v. | : | Civil Action No. |
| AFP ADVANCED FOOD PRODUCTS LLC<br>AND<br>INTERIM PERSONNEL OF LANCASTER, INC.<br>D/B/A STAFFING SERVICE USA<br>DEFENDANTS. | : | Jury Trial Demanded |

## CIVIL COMPLAINT

PLAINTIFF, ESTEFANI ROMERO, by and through her undersigned counsel, hereby files this Civil Action Complaint against DEFENDANTS AFP ADVANCED FOOD PRODUCTS LLC ("AFP") and INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA ("Staffing Service USA"), and avers as follows:

**PARTIES**

1. PLAINTIFF, Estefani Romero, was a resident of Lancaster County, Pennsylvania at all times relevant to these allegations.
2. DEFENDANT is AFP ADVANCED FOOD PRODUCTS LLC, which at all times relevant hereto conducts business in Lancaster County, Pennsylvania.
3. DEFENDANT INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA is a business entity which, at all times relevant hereto, conducts business in Lancaster County, Pennsylvania.

4. PLAINTIFF was employed by DEFENDANT Staffing Service USA and assigned to perform work at DEFENDANT AFP's facility. At all relevant times, DEFENDANTS exercised sufficient control over the terms and conditions of PLAINTIFF's employment to constitute joint employers under applicable federal and state law. Specifically, DEFENDANT AFP exercised direct control over PLAINTIFF's day-to-day work activities, including supervising and directing her job duties, establishing workplace expectations, overseeing her working conditions, and exercising authority over disciplinary actions and the continuation or termination of her assignment.DEFENDANT Staffing Service USA and DEFENDANT AFP may be treated as PLAINTIFF'S single and/or joint employers for purposes of this action.

**NATURE OF THE CASE**

5. PLAINTIFF brings this action against DEFENDANTS pursuant to the Pregnancy Discrimination Act (PDA) under Title VII of the Civil Rights Act of 1964, the Pregnant Workers Fairness Act (PWFA), the Americans with Disabilities Act (ADA), and the Pennsylvania Human Relations Act (PHRA) for unlawful sex and pregnancy discrimination, disability discrimination, failure to accommodate, and retaliation.

**JURISDICTION AND VENUE**

6. This District Court has subject matter jurisdiction over Plaintiff’s federal claims pursuant to 28 U.S.C. § 1331, as they arise under the laws of the United States.

7. This Court has supplemental jurisdiction over Plaintiff’s state law claims pursuant to 28 U.S.C. § 1367.

8. Jurisdiction is proper in the Eastern District of Pennsylvania as PLAINTIFF was and is at all relevant times domiciled in Lancaster, Pennsylvania (Lancaster County) and

DEFENDANTS regularly and continuously conduct business at all relevant times in Lancaster, Pennsylvania (Lancaster County).

9. Venue is proper in the Eastern District of Pennsylvania as PLAINTIFF worked for DEFENDANTS in Lancaster, Pennsylvania and was terminated from employment on February 13, 2025.

10. On or about August 3, 2026, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), Philadelphia District Office, under PHRC Case No. 202500615 and EEOC Case No. 17F-2025-60821. This action is being filed within the 90-day statute of limitations provided by the Notice of Right to Sue.

**MATERIAL FACTS**

11. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

12. On or about October 14, 2024, PLAINTIFF commenced employment with DEFENDANT Staffing Service USA and was assigned to work for DEFENDANT AFP as a full-time First Shift Quality Control Technician, earning $20.00 per hour.

13. Although PLAINTIFF was hired and compensated through DEFENDANT Staffing Service USA, DEFENDANT AFP exercised direct control over PLAINTIFF's daily job duties, work assignments, supervision, and working conditions.

14. Throughout her employment, PLAINTIFF satisfactorily performed the essential functions of her position, received positive feedback regarding her performance, and was capable of performing her assigned duties.

15. During her employment, PLAINTIFF became pregnant and informed her direct supervisor at DEFENDANT AFP, Jessica Thompson, of her pregnancy.

16. DEFENDANT AFP, through Ms. Thompson, was aware of PLAINTIFF's pregnancy and her pregnancy-related medical needs, including her need to attend medical appointments, for which PLAINTIFF provided advance notice.

17. Despite having knowledge of PLAINTIFF's pregnancy, DEFENDANT AFP continued to assign PLAINTIFF physically demanding tasks outside the ordinary scope of her Quality Control Technician position.

18. Specifically, on one occasion, PLAINTIFF and several other Quality Control employees were directed to transport boxes weighing approximately twenty (20) pounds each between buildings at DEFENDANT AFP's facility.

19. PLAINTIFF was expected to transport two (2) boxes, which required her to navigate stairs and an outdoor bridge access point during inclement weather.

20. Due to the physical limitations associated with her pregnancy, PLAINTIFF was only able to transport one (1) box and required assistance from a coworker to complete the assignment.

21. PLAINTIFF was also regularly required to transport reams of printer paper and other materials between buildings, notwithstanding that such assignments were outside her regular job duties and could have been performed by other available personnel.

22. On or about December 16, 2024, PLAINTIFF experienced a syncopal episode while working at DEFENDANT AFP's facility after suffering from low blood sugar and being denied an opportunity to take a necessary break.

23. At the time, DEFENDANT AFP maintained restrictions on eating and drinking in the production area, despite PLAINTIFF's pregnancy-related medical needs.

24. PLAINTIFF had obtained medical documentation supporting her need for accommodations relating to eating and drinking during her workday but was discouraged from utilizing those accommodations.

25. Following the syncopal episode, PLAINTIFF fell and sustained an injury to her face.

26. Despite PLAINTIFF's medical distress, her supervisor, Ms. Thompson, initially failed or refused to contact emergency medical services.

27. Emergency medical services were subsequently contacted following the intervention of DEFENDANT AFP's safety manager, and PLAINTIFF was transported to Lancaster General Hospital for medical evaluation and treatment.

28. In addition to the physically demanding assignments, PLAINTIFF was regularly required to work in areas of DEFENDANT AFP's production facility where she was exposed to strong chemicals, including peroxide.

29. As a result of this exposure, PLAINTIFF experienced physical symptoms, including headaches, nosebleeds, irritation of her eyes, and coughing.

30. PLAINTIFF repeatedly notified Ms. Thompson of these symptoms and expressed concerns regarding the potential effects of continued chemical exposure on her health and pregnancy.

31. Despite PLAINTIFF's complaints and requests to be removed from the area of chemical exposure, DEFENDANT AFP continued to assign PLAINTIFF to work in the same production environment.

32. In response to PLAINTIFF's concerns, Ms. Thompson suggested that PLAINTIFF transport materials from an X-ray room to the laboratory.

33. However, PLAINTIFF remained concerned that this proposed assignment would expose her to additional workplace hazards, including radiation, and would not adequately address her pregnancy-related medical restrictions.

34. On or about February 5, 2025, PLAINTIFF obtained medical documentation from her treating physician identifying her pregnancy-related medical restrictions and requesting accommodations to protect her health and the health of her unborn child.

35. Specifically, PLAINTIFF's physician requested that she not be assigned to areas where she could inhale chemicals that could adversely affect her or her pregnancy and identified additional physical restrictions relating to standing, sitting, and lifting.

36. PLAINTIFF submitted the medical documentation to DEFENDANT Staffing Service USA, thereby placing the staffing agency on notice of her pregnancy-related medical limitations and need for reasonable accommodations.

37. Upon receipt of PLAINTIFF's medical documentation, DEFENDANT Staffing Service USA forwarded the restrictions to DEFENDANT AFP, including PLAINTIFF's supervisor, Ms. Thompson.

38. Accordingly, both DEFENDANTS had actual knowledge of PLAINTIFF's pregnancy, her pregnancy-related medical conditions, and her need for workplace accommodations.

39. PLAINTIFF sought reasonable accommodations that would permit her to continue performing her job duties while avoiding chemical exposure and complying with her physician's physical restrictions.

40. Such accommodations included modifications to her work assignments, reassignment away from areas involving chemical exposure, limitations on lifting, and adjustments to prolonged standing and sitting.

41. Rather than meaningfully exploring accommodations that would permit PLAINTIFF to continue working, DEFENDANT AFP determined that it would not continue PLAINTIFF's assignment.

42. On or about February 13, 2025, PLAINTIFF was informed by DEFENDANT Staffing Service USA that DEFENDANT AFP was unwilling to take the risk of continuing her employment in light of her pregnancy-related medical restrictions.

43. DEFENDANT Staffing Service USA communicated DEFENDANT AFP's decision to PLAINTIFF and advised her that her assignment had been terminated.

44. The termination of PLAINTIFF's assignment with DEFENDANT AFP resulted in the loss of her position, regular work hours, and earnings.

45. PLAINTIFF was not provided with formal termination documentation or a written explanation identifying any performance-related or disciplinary reason for the termination of her assignment.

46. At the time her assignment was terminated, PLAINTIFF remained willing and able to perform the essential functions of her position with reasonable accommodations.

47. Prior to terminating PLAINTIFF's assignment, DEFENDANTS failed to meaningfully engage with PLAINTIFF to identify reasonable accommodations that would permit her to continue performing her duties consistent with her medical restrictions.

48. DEFENDANTS further failed to adequately consider modifications to PLAINTIFF's existing duties, alternative work assignments, or other available accommodations that would have permitted her to continue working without imposing an undue hardship.

49. The termination of PLAINTIFF's assignment occurred approximately eight (8) days after she submitted her physician's written request for pregnancy-related accommodations.

50. PLAINTIFF alleges that DEFENDANTS subjected her to adverse employment action because of her pregnancy, pregnancy-related medical conditions, and requests for reasonable accommodations.

## COUNT I
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII")
## AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA

51. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

52. Title VII of the Civil Rights Act of 1964 (Title VII) prohibits employment discrimination against "any individual" based on that individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a).

53. To establish a prima facie case of gender discrimination, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the position she sought to retain; (3) she suffered an adverse employment action, and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Mandel v. M&Q Packaging Corp.*, 706 F. 3d 157, 169 (3d Cir. 2013).

54. PLAINTIFF is a female and a member of a protected class under Title VII.

55. PLAINTIFF was qualified for her position, performed her job duties competently, and met or exceeded DEFENDANTS' legitimate expectations.

56. DEFENDANTS treated PLAINTIFF less favorably than similarly situated male employees with respect to the terms and conditions of her employment.

57. PLAINTIFF was subjected to adverse employment action when DEFENDANTS terminated her employment.

58. DEFENDANTS' treatment of PLAINTIFF and the circumstances surrounding her termination give rise to an inference of unlawful gender discrimination.

59. PLAINTIFF's gender was a motivating factor in DEFENDANTS' decision to terminate her employment.

**COUNT II**
**DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT ("PDA")**
**AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA**

60. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

61. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

62. Title VII prohibits discrimination by employers “because of [an individual's] race, color, religion, sex, or national origin.” 42 U.S.C. § 2000e-2(a)(1). Under the Pregnancy Discrimination Act (“PDA”), [t]he terms “because of sex” or “on the basis of sex” include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. *Etkins v. Dive N. Hills, LLC, No.* 2:24-CV-01474-CCW, 2026 WL 1487445, at 4 (W.D. Pa. May 28, 2026).

63. To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate that: (1) she is or was pregnant, and her employer was aware of her pregnancy; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there is a nexus between her pregnancy and the adverse employment action that would allow a factfinder to infer discrimination. *Keita v. Delta Cmty. Supports, Inc.*, Civil Action No. 19-5967, 2020 U.S. Dist. LEXIS 110550 (E.D. Pa. June 24, 2020).

64. PLAINTIFF was pregnant at the time of her termination and had informed DEFENDANTS of her pregnancy. PLAINTIFF's pregnancy-related medical needs were communicated to DEFENDANTS through medical documentation provided by her physician on February 5, 2025, which requested reasonable accommodations.

65. PLAINTIFF was qualified for her position as a Quality Control Technician.

66. The circumstances surrounding PLAINTIFF's termination support an inference of discrimination. PLAINTIFF informed DEFENDANTS of her pregnancy and requested reasonable accommodations, and was subsequently terminated because DEFENDANT AFP stated they were unwilling to "take the risk." This close temporal proximity and DEFENDANT AFP's refusal to engage in the interactive process establish a nexus between her pregnancy and the adverse employment action sufficient to allow a factfinder to infer discrimination.

## COUNT III
## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE PREGNANT WORKERS FAIRNESS ACT ("PWFA") AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA

67. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

68. The PWFA requires covered entities to make reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of a qualified employee, unless the accommodation would impose an undue hardship. 42 U.S.C. § 2000gg-1(1).

69. The PWFA further prohibits employers from denying employment opportunities or taking adverse actions against a qualified employee based on the need to make reasonable accommodations. *Id.*

70. PLAINTIFF was a qualified employee with known physical limitations related to her pregnancy.

71. PLAINTIFF communicated her known pregnancy-related limitations and submitted supporting medical documentation on February 5, 2025.

72. DEFENDANTS discriminated against PLAINTIFF by failing to provide reasonable accommodations for her known pregnancy-related limitations and subjecting her to adverse employment action because of her need for such accommodations, in violation of the Pregnant Workers Fairness Act.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA") AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA

73. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

74. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

75. To prove disability discrimination, plaintiffs must demonstrate: (1) they have a disability within the meaning of the ADA; (2) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) they have suffered an otherwise adverse employment decision as a result of discrimination. *Morgan v. Allison Crane & Rigging LLC,* 114 F.4th 214 (3d Cir. 2024).

76. The ADA defines "disability" as: A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; B) a record of such impairment; or C) being regarded as having such impairment. 42 U.S.C. § 12102(1).

77. PLAINTIFF experienced severe chemical sensitivities, nosebleeds, and syncopal episodes during her pregnancy, which constituted physical impairments substantially limiting one or more of her major life activities. PLAINTIFF's medical conditions qualify as a disability under the ADA.

78. PLAINTIFF was terminated due to her pregnancy-related disability and perceived risk.

79. Had PLAINTIFF not been disabled she would not have been terminated by DEFENDANTS.

## COUNT V
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA") AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA

80. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

81. DEFENDANTS failed to engage in the interactive process required by the ADA to determine reasonable accommodations that would have allowed PLAINTIFF to continue performing the essential functions of her job. Instead, DEFENDANTS refused to accommodate PLAINTIFF's medical restrictions and terminated her employment.

82. PLAINTIFF was qualified to perform the essential functions of her position with reasonable accommodations, which would not have posed an undue hardship on DEFENDANTS.

83. The requested accommodations included protection from severe chemical exposure, lifting limits, and standing/sitting modifications, as requested by PLAINTIFF and supported by her medical provider.

84. DEFENDANTS terminated PLAINTIFF instead of accommodating her or engaging in the interactive process to find a reasonable accommodation.

**COUNT VI**
**GENDER DISCRIMINATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA")**
**AGAINST DEFENDANTS, RANDSTAD DIGITAL, LLC., D/B/A CELLA, AND PENSKE TRUCK LEASING CO., L.P**

85. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

86. The Pennsylvania Human Relations Act ("PHRA") prohibits discrimination on the basis of gender, 43 P.S. § 951 et seq.

87. Claims brought under the PHRA are analyzed under the same legal framework as Title VII. Accordingly, for the reasons set forth in Count I above, DEFENDANTS discriminated against PLAINTIFF because of her sex by subjecting her to disparate treatment and terminating her employment.

**COUNT VII**
**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**AGAINST DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC AND INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA**

88. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

89. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) [s]he engaged in a protected activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Johnson v. Sage Dining Servs., Inc.*, No. 23-3929 SWR, 2024 U.S. Dist. LEXIS 201859, at pg. 27 (E.D. Pa. Nov. 6, 2024)

90. "The right to request an accommodation in good faith is a protected activity under the ADA." *Id.*

91. PLAINTIFF engaged in protected activity under the ADA when she requested reasonable accommodations for her pregnancy-related medical impairments and physical limitations.

92. On or about February 5, 2025, PLAINTIFF submitted medical documentation requesting accommodations concerning chemical exposure, lifting, standing, and sitting.

93. DEFENDANT Staffing Service USA received PLAINTIFF's medical documentation and forwarded it to DEFENDANT AFP, thereby placing both DEFENDANTS on notice of PLAINTIFF's protected activity.

94. Rather than considering PLAINTIFF's requested accommodations, DEFENDANT AFP determined that it was unwilling to assume the perceived risk associated with PLAINTIFF's continued employment.

95. On or about February 13, 2025, DEFENDANT AFP terminated PLAINTIFF's assignment, and DEFENDANT Staffing Service USA communicated that decision to PLAINTIFF.

## JURY DEMAND

96. PLAINTIFF hereby demands a trial by jury on all triable issues.

## PRAYER FOR RELIEF

97. WHEREFORE, PLAINTIFF, Estefani Romero, respectfully requests that this Honorable Court enter judgment in her favor and against DEFENDANTS, AFP ADVANCED FOOD PRODUCTS LLC and INTERIM PERSONNEL OF LANCASTER, INC. D/B/A STAFFING SERVICE USA, and award PLAINTIFF actual damages for the loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest; compensatory damages for distress, lost career, embarrassment, and humiliation; punitive damages; costs of this action and reasonable attorney’s fees, and all other relief to which PLAINTIFF may be entitled or which the Court deems appropriate and just.

**STARK LAW GROUP, LLC**

By:_____/s/ Alexis Conrad___
Alexis Conrad
Attorney Bar No: 335686
1370 Harrisburg Pike
Lancaster, PA 17601
Phone: 717-844-6350
Email:alexis@starklawllc.com

DATE: October 30, 2026